JD

$350

(1)

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER MOMOT, individually and as | : | |
| Administrator of the Estate of Mark Momot, | : | |
| Plaintiff, | : | **11   7806** |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| And | : | **No.:** |
| POLICE COMMISSIONER, | : | |
| CHARLES RAMSEY | : | |
| And | : | |
| PHILADELPHIA POLICE DEPARTMENT | : | |
| And | : | |
| PHILADELPHIA POLICE OFFICERS, | : | |
| JOHN/JANE DOE 1-5 | : | |
| Defendants. | : | |



FILED

DEC 2 3 2011

MICHAEL E. KUNZ

By_____ p. Clerk

## COMPLAINT

Plaintiff, Peter Momot, by and through his Attorneys allege causes of action against all defendants for wrongful death and survival act damages and other damages for the violations of the constitutional rights of the decedent, Mark Momot, and alleged causes of action against the defendants.

### I.   PARTIES

1.  Plaintiff, Peter Momot, individually and as administrator of the Estate of Mark Momot, is an adult individual residing at 9980 Sandy Road, Philadelphia, PA 19115.

2.  Plaintiff is the administrator of the Estate of Mark Momot, deceased, having been granted letters of administration on March 10, 2010 by the Register of Wills of Philadelphia County, Pennsylvania at file number A0962-2010. A true and correct copy of the letter of administration is attached hereto as Exhibit "A".

3.  The Plaintiff Decedent is Mark Momot who at the time of his death on February 13, 2010

was a 34 year old resident of Philadelphia County, PA. His date of birth was May 18, 1975.

4.  Upon information and belief Defendant City of Philadelphia is a political subdivision of the Commonwealth of Pennsylvania with offices for service of process at 1515 Arch Street, Philadelphia, PA.

5.  Upon information and belief, at all material times Defendant, City of Philadelphia, owned, operated, managed, supervised, and otherwise controlled the Philadelphia Police Department and the Philadelphia Police Districts and all the persons who worked there including all Philadelphia Police Officers and Supervisors.

6.  Upon information and belief, at all material times Defendant, Police Commissioner Ramsey was the Philadelphia Police Commissioner and was employed by the City of Philadelphia.

7.  Upon information and belief, at all material times Defendant, Philadelphia Police Officers John/Jane Doe 1-5 were employed by the Philadelphia Police Department and arrested Defendant and/or worked at the 15th District Police Station in Philadelphia, PA.

8.  All Defendants identified/referenced may be served at Defendant City of Philadelphia's offices at 1515 Arch Street, Philadelphia, PA.

9.  At all material times Defendant, City of Philadelphia, acted/failed to act by and through its employees, workers, servants, and other agents, all in the course of scope of their employment.

10. Upon information and belief, at all material times Defendant, Police Commissioner Ramsey was the highest ranking Police Official in the Philadelphia Police Department and was responsible for: (a) establishing the policies, practices and regulations for

conduct of all employees of the Philadelphia Police Department; (b) hiring, training,

supervising, disciplining, and otherwise controlling all persons who worked in the

Philadelphia Police Department including all Police Officers at the 15th District Police

Department; (c) controlling the operations, practices and tactility of conditions at the 2nd

District Police Department; (d) establishing/instilling in all Police personnel a proper

regard for the health and safety of all pre-trial detainees; (e) supervising, hiring, training

all police personnel who are to be responsible for the safety of pre-trail detainees; (f)

implementing adequate policies, procedures, practices, protocols, and other safe guards

for suicide risk assessment and suicide prevention; (g) implementing adequate policies,

procedures, practices, protocols, and other safe guards to protect pre-trail detainees from

dangerous prison environment, negligence, callousness, and other suicide risk enhancers;

(h) implementing adequate policies, procedures, practices, protocols, and other safe

guards to protect prisoners charged with crimes, from suicide risk enhancers and from

committing suicide.

11. At all material times Defendant, City of Philadelphia, was responsible for implementing

and/or overseeing the implementation of all policies, procedures, practices, protocols, and

other safe guards for pre-trial detainee safety in Philadelphia Prisons/or holding cells.

12. At all material times Defendant, City of Philadelphia, was responsible for the hiring,

training, supervision, disciplining, firing and/or other control of all persons employed by

or otherwise working in the Philadelphia Police Department.

13. At all material times, and regardless of who employed them, all Defendant individuals

were acting under color of state law. They are sued individually and in their official

capacities.

## II.    JURISDICTION AND VENUE

14. This court has jurisdiction of this law suit pursuant to 41 U.S.C. §1982 and the
    United States Constitution. This court also has pendant jurisdiction of all the state law
    claims.

15. Federal question jurisdiction is invoked under 42 U.S.C. §1221 and §1343 as
    amended. This court also has pendant jurisdiction of all the state law claims.

16. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391.

## III.    COMMON FACTS TO ALL DEFENDANTS

17. Plaintiff incorporates and re-alleges all the above paragraphs as though set forth
    herein in their entirety.

18. On her about February 12, 2010 at approximately 10:00 p.m. Decedent Mark Momot
    was taken into custody by the Philadelphia Police Department for violating a
    protective order at his parent's home.

19. At the time of his arrest, the Philadelphia Police were made aware that Decedent
    Mark Momot had been drinking and/or doing drugs.

20. The Philalephia Police had been to Decedent's parent's home on previous occasions
    regarding the Decedent and were on notice of his mental state.

21.  The Philadelphia Police were called to the Decedent's parent's home on numerous
    occasions regarding attempted suicide by the Decedent and had taken him into
    custody on several different occasions regarding domestic disturbances.

22. At the time of the arrest on February 12, 2010 the police were made aware of his
    mental issues as well as his intoxicated state.

23. Decedent, Mark Momot, was taken to the 15th District at which time he was placed

into a holding cell during the evening and early morning hours of February 12-13, 2010.

24. At all times relevant hereto, Plaintiff Decedent was under the care, custody and control of Philadelphia Police Department Officials and/or medical staff.

25. Plaintiff's Decedent was alive, healthy and physically well upon his admission into the 15th District holding cell during the evening and early morning hours of February 12-13, 2010.

26. Upon information and belief, on February 13, 2010 at approximately 3:15 a.m. unidentified Philadelphia police officers found Plaintiff's Decedent inside his holding cell hanging from the top bar from his shirt tied around his neck.

27. Upon information and belief, Plaintiff's Decedent was refused and/or denied medical assistance by the Philadelphia police officers for a substantial period of time until the rescue squad arrived at approximately 3:30 a.m.

28. Upon information and belief, Plaintiff's Decedent was left hanging in the jail cell for the period of time of at least 15 minutes prior to the rescue squad arriving at the 15th Police District.

29. Upon information and belief, Defendants did not render adequate, proper, appropriate, or timely medical treatment or care to Plaintiff's Decedent even after he was found in his holding cell hanging from the top bar of the cell.

30. The Philadelphia Police Department Officers did not render emergency aid and/or rendered inadequate care and unreasonable delayed in calling 911 for outside emergency medical services from the Philadelphia Fire Department.

31. When Paramedics form the Philadelphia Fire Department arrived at the 15th Police

District, Plaintiff's Decedent was still hanging from the top bar of his cell from a noose made out of his shirt and was dead.

32. Decedent's death was ruled a suicide by hanging.

33. At all times relevant, Decedent was suicidal.

34. At all times, relevant, the Defendants knew or should have known from prior occasions that Decedent was suicidal or had suicidal tendencies.

35. The Defendants failed to properly monitor Decedent allowing him to be unsupervised which allowed him the time to fashion a noose from his shirt and hang himself.

36. Upon information and belief, Defendants were put on notice of Decedents psychiatric condition and prior suicide attempts as well as his intoxication prior to putting him into a holding cell at the 15th District Police Department.

37. Upon information and belief, Plaintiff alleges that, prior to his death, Defendants knew of Decedents depression and/or should have known of his depression and/or suicidal ideation and intentionally and deliberately or with reckless indifference, disregarded Decedents depression and suicide risk, all in violation of his rights in the United States Constitution and under the Pennsylvania Constitution.

38. Defendants violated Decedent's rights by any and all: (a) failing to place Decedent on an appropriated and effective suicide watch; (b) failing to have Decedent evaluated by medical staff; (c) failing to transfer Decedent to an appropriate mental health facility; (d) failing to remove from Decedent's jail cell all items by which Decedent could harm himself; (e) failing to provide Decedent with the proper necessary psychiatric care and reasonable safe guards and other precautions to assure his safety ; (f) failing to properly monitor and watch Decedent to protect him from harming himself; (g)

failing to create, establish and/or implement an adequate suicide prevention system and/or failing to follow their own internal guidelines; (h) failing to train Police Officers and other employees of Defendant's who interacted with prisoners to recognize potentially suicidal detainees.

39. As Plaintiff Decedent was in custody as a pre-trial detainee, there existed a special relationship between Defendants and Plaintiff's Decedent.

40. Defendants were trusted to provide Plaintiff's Decedent with appropriate and timely medical care and treatment and further were responsible for his protection, safety, well-being and life while he was in custody at the Philadelphia Police Department.

41. During the period of time the Decedent was detained at the 15th District holding cell he was in need of mental health care and was in a suicidal condition, all of which was known by Defendants or should have been known to them upon use of reasonable care.

42. At all times relevant hereto, Decedent was or should have been provided proper safe guards for his safety and/or provided proper care, medical or otherwise, while in the custody of Defendants against his will.

43. Prior to his death, Defendants had actual knowledge of Decedent's compromised mental health, knew or had reason to know of his risk for suicide but deliberately or recklessly failed to act in disregard of Decedent's compromised mental health state.

44. Despite said knowledge, Defendant's failed to take necessary and available precautions to protect Decedent, as is required by 4th, 8th, and 14th Amendments to United States Constitution.

45. Despite the fact that Defendants knew or should have known of Decedent's

psychiatric condition, Decedent was not provided proper safe guards, monitoring, or attention by the Defendants.

46. Upon information and belief, Defendants knew or should have knows that Decedent presented a high risk of suicide while in detention in the holding cell.

47. Upon information and belief, the cell in which the Decedent was held during his detention was or should have been under frequent observation by plain sight and sound of Defendant's police officers.

48. As a direct result of Defendant's conduct described above, Decedent suffered great personal injury and felt great pain and suffering between the time his suicide attempt began through the time of his death.

49. As a further result of the Defendant's conduct, Decedent's life ended, which resulted in loss of earnings and income to which his estate would have been entitled.

50. Upon information and belief, Plaintiff's Decedent's suicide was not the first at a Philadelphia Police Department Detention Center.

51. Pre-trail detainees are at risk for great physical harm, injury, and death due to the failure of the Defendants to create or implement an adequate suicide prevention program and by their failure to properly train the employees in how to recognize potentially suicidal detainees and set in motion proper safe guards and protections from them.

52. Indeed, in this case Defendants' had actual knowledge of Plaintiffs' Decedent's suicidal tendencies since that had him in custody on many occasions and were told of his mental issues.

53. Defendants are under a duty and obligation to provide a safe and suitable detention

facility.

54. Pre-trial detainees are entitled to the same constitutional protection as persons convicted of crimes. Diaz vs. Houck 159 Pa. Cmwlth 274, 632 A.2d 1081 (1993).

55. Defendants knew prior to February 12, 2010 that there had been suicides and suicide attempts by pre-trial detainees within the police station holding cells.

56. Each of these suicides and suicide attempts increased the obligation on the part of the Defendants to implement policies and training of personnel to ensure the safety of pre-trial detainees.

57. Upon information and belief, despite Defendants' knowledge of past suicides and suicide attempts, the Defendants have failed and continue to fail to take necessary steps to correct or remedy the deficiencies in the operation of the Philadelphia Police District holding cells that facilitates suicides and suicide attempts.

58. Decedent's suicide was predictable and the product of the deliberate indifference of the Defendants.

59. This deliberate indifference on the part of Defendants resulted from official positions and policies and/or from well settled practices on the part of the Defendants so as to establish them as official policy.

60. Pursuant to the Fourteenth Amendment to the United States Constitution, Decedent had the right to be secure in his life and person and to proper medical care while confined pursuant to state authority. Harding v. Galyias 117 Pa. Cmwlth 371, 544 A.2d 1060 (1988) (When individuals are placed in custody by government, they have a liberty interest, protected by the due process clause of Fourteenth Amendment, in safe conditions of confinement). Diaz vs. Houck 159 Pa. Cmwlth 274, 632 A.2d 1081

(1993), Colburn v. Upper Darby Township, 838 F. 2nd. 663 (3rd Cir. 1988) (A detainee is entitled to constitutional protection of his personal safety and to reasonable medical care).

61. Pursuant to the Eighth Amendment to the United States Constitution, Decedent had the right to be secure in his life and person and to proper medical care while confined pursuant to state authority. Rhodes v. Chapman 452 U.S. 337, 101 S.Ct. 2392 (1981) (Deliberate indifference to an inmate's medical care is cruel and unusual punishment). Colburn v. Upper Darby Township, 838 F. 2nd. 663 (3rd Cir. 1988) (The Eighth Amendment to the United States Constitution imposes a duty upon custodial officials to address the serious medical needs of a pre-trial detainee including psychiatric needs).

62. To effectuate further punishment of the Decedent, the defendants deliberately ignored and/or acted with deliberate indifference to Decedent's compromised emotional state and obvious suffering.

63. Defendants deliberately ignored and/or acted with deliberate indifference to the Decedent's obvious physical and emotional suffering as well as his medical condition.

64. Defendants deliberately ignored and/or failed to adequately check, monitor, and safeguard the Decedent during his confinement and detention in his cell.

65. Upon information and belief, Defendants have a written policy pursuant to which individuals identified as high risks for suicides are to be placed in a special cell or unit that is specifically designed to reduce the risk of suicide.

66. Upon information and belief, pursuant to said written policy decedent fit the criteria

for an individual with a high risk of suicide.

67. Contrary to said written policy and despite the knowledge that Decedent was at significant risk to attempt suicide, Defendants failed to place Decedent in the aforementioned cell or unit designed for individuals with a high risk of suicide.

68. Defendants and their policy makers were deliberately indifferent to the need for care to suicidal or emotionally disturbed pre-trial detainees in general and specifically Decedent, and to the need to train other responsible personnel to recognize the needs of pre-trial detainees such as Decedent, and to provide or obtain necessary supervision and care for those persons.

69. The actions and omissions of Defendants, deprived Decedent of his rights, privileges and immunities under the laws and Constitution of the United States, in particular, the right to life, liberty and adequate care while incarcerated against his will.

70. In addition, the actions and omissions of Defendants, deprived Decedent of his rights, privileges and immunities under the laws and Constitution of the Commonwealth of Pennsylvania, including the right to enjoy his life.

71. The right to adequate care and supervision for pre-trial detainees, such as Decedent, is, and was, at all times relevant hereto, a clearly established constitutional right under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution as well as Article I §1 of the Constitution of the Commonwealth of Pennsylvania.

72. Upon information and belief, at no time relevant hereto, did any of the Defendants reasonably or in good faith believe that their conduct toward Decedent was lawful, privileged, or otherwise permissible under the laws or constitutions of the United States and the Commonwealth of Pennsylvania, or that the law regarding the rights of

citizens such as Decedent was in any way unsettled.

73. Upon information and belief, all Defendants engaged in the aforesaid conduct for the

purpose of violating Decedent's constitutional rights by refusing and failing to

monitor, check or safeguard the condition of Decedent and failing to prevent his

death.

74. Upon information and belief, all of the actions of the Defendants' have been with

deliberate indifference and is routed in a matter of policy and practice.

<u>COUNT I</u>
<u>PLAINTIFFS v. ALL  DEFENDANTS</u>
<u>SURVIVAL ACTION</u>
<u>VIOLATIONS OF THE FOURTH AND FOURTEEN AMENDMENTS TO THE</u>
<u>CONSTITUTION OF THE UNITED STATES</u>

75. Plaintiffs re-allege each and every allegation as set forth previously as if more fully

set forth herein.

76. Decedent did not bring an action for his personal injuries during his lifetime and no

other action for the death of the Decedent has been commenced against the

Defendants.

77. Plaintiffs bring this action pursuant to the Probate Estates and Fiduciary Code, 20

Pa.C.S. §§3372, 3373 and 42 Pa.C.S. §8302, commonly known as the Survival Act,

and claim all damages recoverable under that Statute by the Estate of Mark Momot,

on behalf of themselves and all others entitled to recover under law, including, but not

limited to, damages for Mark Momot's loss of earnings and earning capacity, medical

expenses, damages for the physical and emotional  pain, fear, anxiety, mental

suffering and emotional distress which Decedent suffered prior to his death, and

damages for Mark Momot's loss of his ability to engage in normal activities and

enjoy the normal pleasures of life.

78. Each of the Defendants had a duty to identify, monitor and safeguard suicidal, or emotionally disturbed pre-trial detainees, including Decedent, and to protect pre-trial detainees, including Decedent from harm, injury or death, self-inflicted or otherwise.

79. Each of the Defendants breached that duty of care owed to Decedent.

80. Defendants failed to act reasonably and with due care by failing to (a) remove Decedent to the appropriate prison medical or psychiatric unit; and/or (b) failing to remove decedent to an appropriate hospital or mental health institute or other facility for medical and/or psychiatric treatment; and/or failing to (c) adequately monitor Decedent while he was in Defendants' custody; (d) by failing to render emergency medical aid when they found Decedent hanging from his cell.

81. The officers, employees and agents of Defendants have not been trained or have been inadequately trained, and are ill-equipped and unable to identify, monitor, or safeguard suicidal, medication or drug dependent or emotionally disturbed pre-trial detainees.  The staff has no such adequate training and, at all times relevant hereto, were unable to identify, monitor, or safeguard suicidal, drug dependent or emotionally disturbed pre-trial detainees.

82. Decedent's suicide, and the injuries that he suffered prior to his death were the direct and proximate result of the conduct of the Defendants in the manner in which they monitored, supervised and/or controlled Decedent when they knew or should have known that he had suicidal tendencies.

83. Decedent's injuries and death were caused by the existing and/or non-existent practices, procedures, policies and/or by the totality of conditions at the prison, and/or

by understaffed and/or ill-trained staff, and/or by an absence of adequate procedures to identify, treat, monitor and safeguard suicidal, drug or medication dependent or emotionally disturbed pre-trial detainees.

84. As a result of the Decedent's isolation in a prison cell with conditions creating grave risks of physical harm, injury and death, and on account of the Decedent's known depression it was or should have been reasonably foreseeable to Defendants that Decedent would attempt to injure himself, behave or think irrationally, and to attempt to take his own life.

85. Despite this knowledge, said Defendants refused and failed to promptly or reasonably procure competent medical treatment for Decedent, and further exacerbated the risk to himself by leaving him alone in a cell with opportunity and means to harm himself.

86. Defendants knew or should have known of the risks of grave physical harm, injury, and death to which the Decedent was exposed by Defendants' leaving him alone in a cell in his physical, medical and emotional condition, and in light of his known compromised mental state.

87. Defendants failed to establish an adequate suicide prevention program, or to train prison employees and/or agents to identify drug or medication dependent and/or otherwise suicidal pre-trial detainees, or to properly monitor suicidal, drug or medication dependent and emotionally disturbed pre-trial detainees placed in cells; said Defendants also failed to develop or implement procedures, policies, practices, guidelines, or/or training for the safe-guarding and protection of suicidal, drug or medication dependent and emotionally disturbed pre-trial detainees such as the Decedent during their detention in the prison facility; said Defendants also failed to

prevent such compromised detainees from exposure to conditions of suffering and risks of grave physical harm, injury, and death. This conduct by Defendants was a proximate cause of the Decedent's pain, suffering, and death, and was undertaken deliberately or in reckless disregard of clearly established constitutional standards, principles, and law.

88. The actions of Defendants manifested a deliberate indifference to Decedent's constitutional rights in violation of the Fourteen Amendment to the United States Constitution and of Title 42, United States Code, §1983.

89. The actions of Defendants, acting under color of state law, deprived Decedent of his rights, privileges and immunities under the laws and Constitution of the United States, specifically the Fourth and Fourteenth Amendments guaranteeing that the Plaintiff's right to be secure in his safety.

**WHEREFORE**, Plaintiffs request that this Honorable Court:

a)      Award compensatory damages against all Defendants jointly and/or severally in an amount in excess of $150,000.00;

b)      Award punitive damages;

c)      Award costs of this action, including reasonable attorney's fees and costs; and

d)      Such other legal and equitable relief as the Court may deem proper.

**COUNT II**
**PLAINTIFFS V. ALL DEFENDANTS**
**SURVIVAL ACTION**
**VIOLATIONS OF THE EIGHTH  AMENDMENT**
**TO THE CONSTITUTION OF THE UNITED STATES**

90. Plaintiffs re-allege each and every allegation as set forth previously as if more fully set forth herein.

91. The actions of Defendants manifested a deliberate indifference to Decedent's constitutional rights in violation of the Eighth Amendment to the United States Constitution and of Title 42, United States Code, §1983.

92. The actions of Defendants, acting under color of state law, deprived Decedent of his rights, privileges and immunities under the laws and Constitution of the United States, specifically the Eighth Amendment prohibiting cruel and unusual punishment.

**WHEREFORE**, Plaintiffs request that this Honorable Court:

a)       Award compensatory damages against all Defendants jointly and/or severally in an amount in excess of $150,000.00;

b)       Award punitive damages;

c)       Award costs of this action, including reasonable attorney's fees and costs; and

d)   Such other legal and equitable relief as the Court may deem proper.

**COUNT III**
**PLAINTIFFS v.ALL  DEFENDANTS**
**SURVIVAL ACTION VIOLATIONS OF THE CONSTITUTION OF THE COMMONWEALTH OF PENNSYLVANIA**

93. Plaintiffs re-allege each and every allegation as set forth previously as if more fully set forth herein.

94. The actions of Defendants manifested a deliberate indifference to Decedent's constitutional rights in violation of Article I §1 of the Constitution of the Commonwealth of Pennsylvania.

95. The actions of Defendants, acting under color of state law, deprived Decedent of his rights, privileges and immunities under the laws and Constitution of the Commonwealth of Pennsylvania, specifically Article I, §1.

**WHEREFORE**, Plaintiffs request that this Honorable Court:

a)      Award compensatory damages against all Defendants jointly and/or severally in
an amount in excess of $150,000.00;

b)      Award punitive damages;

c)      Award costs of this action, including reasonable attorney=s fees and costs; and

d)  Such other legal and equitable relief as the Court may deem proper.

**COUNT IV**
**PLAINTIFFS v. JOHN/JANE DOES 1-5**
**SURVIVAL ACTION (NEGLIGENCE)**

96. Plaintiffs re-allege each and every allegation as set forth previously as if more fully
set forth herein.

97. Defendants, individually and/or by and through their agents, servants and/or
employees ensure the safety and well being of individuals who were prisoners/ pre-
trial detainees at the Montgomery County Prison, including but not limited to
Decedent.

98. Upon information and belief, Defendants had actual knowledge of Decedent's
compromised mental state prior to his death.

99. Defendants, individually and/or by and through its/their agents, servants and/or
employees knew or should have known that Decedent was suffering from a
debilitating mental and/or physical condition that required immediate medical and/or
mental health care while in detention at the Philadelphia Police District holding cell.

100.    Defendants, individually and/or by and through its/their agents, servants and/or
employees knew or should have known that Decedent was a high risk candidate for
suicide.

101.    Decedent's death and the injuries he suffered prior to his death were caused in

whole or in part by the carelessness, recklessness and/or negligence of Defendants by and through their agents, servants and/or employees.

102.    The carelessness, recklessness and/or negligence of Defendants, individually and/or by and through its/their agents, servants and/or employees consisted of any or all of the following:

       a)    failing to identify Decedent as a high risk candidate for suicide;

       b)    failing to provide Decedent with medical and/or psychological care, including without limitation, proper and necessary medication;

       c)    failing to implement safeguards that would identify high risk candidates for suicide;

       d)    failing to observe that Decedent was in immediate need of medical and/or mental health care;

       e)    failing to check available records which would have identified Decedent as a high risk for suicide;

       f)    failing to act reasonably (including without limitation, informing the other defendants) with respect to information concerning decedent's mental condition, which information was furnished by decedent=s treating psychiatrist;

       g)    failing to advise, instruct, train and otherwise educate  the other defendants how to identify and monitor prisoners/pre-trial detainees who were at risk for suicide;

       h)    failing to take steps to prevent Decedent from attempting suicide; and

       i)    otherwise failing to use due and proper care under the circumstances.

103.    As a direct and proximate result of the carelessness, recklessness and/or negligence of Defendants individually and/or by and through their agents, servants and/or employees Decedent attempted suicide by hanging himself in his cell on February 13, 2010 which led to injuries that caused his death on February 13, 2010.

**WHEREFORE**, Plaintiffs request that this Honorable Court:

     a)      Award compensatory damages against all Defendants jointly and/or severally in an amount in excess of $150,000.00;

     b)      Award punitive damages;

     c)      Award costs of this action, including reasonable attorney's fees and costs; and

     d)      Such other legal and equitable relief as the Court may deem proper.

## COUNT V
## PLAINTIFFS v. ALL DEFENDANTS
## WRONGFUL DEATH

104. Plaintiffs re-allege each and every allegation as set forth previously as if more fully set forth herein.

105. Plaintiffs are the sister and brother-in-law of the Decedent and bring this action pursuant to the Wrongful Death Act, 42 Pa.C.S. §8301 and claim all damages recoverable under that Statute, on behalf of themselves and all other persons entitled to recover under law.

106. Decedent left surviving him the following persons entitled to recover damages for his death, on whose behalf this claim is brought:

     a.      Peter Momot (Brother)
               1147 Hollywood Avenue
               Upper Darby, PA 19082

     b.      Boleslaw Momot & Dunde Momot (Parents)
               1119 Hartel Street
               Philadelphia, PA 19111

107. By reason of the death of Decedent, his said survivors have incurred funeral, burial, medical, and other expenses and other pecuniary losses.

108. Decedent's suicide and death were the direct and proximate result of the conduct

of the Defendants in violating the Constitutional Rights of the Decedent and/or in their carelessness and negligence as more fully set forth above.

**WHEREFORE**, Plaintiffs request that this Honorable Court:

a) Award compensatory damages against all Defendants jointly and/or severally in an amount in excess of $150,000.00;

b) Award punitive damages;

c) Award costs of this action, including reasonable attorney's fees and costs; and

d) Such other legal and equitable relief as the Court may deem proper.

Respectfully submitted,
GREG PROSMUSHKIN, P.C.

By: _____

Alfred J. Falcione, Esquire
Attorney ID: 71386
9637 Bustleton Ave.
Philadelphia, PA 19115

**EXHIBIT "A"**